## * COMMONWEALTH *versus* EBENEZER STOW.

In an indictment for forgery, alleging an instrument to be "in the words and *figures* following," a strict recital is necessary.

By an *act* of the legislature passed June 12, 1800, (*stat.* 1800, *c.* 5,) divers persons named in the act, belonging to the several towns of *Russell*, *Blandford*, *Norwich*, and *Montgomery*, in this county were incorporated by the name of *The United Baptist Society*, with

all the privileges, powers, and immunities, so far as should be necessary for the support and maintenance of public worship, to which parishes are by law entitled in this commonwealth. By the *second section* of the *act*, it is enacted, "That any person in either of the towns of *Russell, Blandford, Norwich,* and *Montgomery,* aforesaid, being of the Baptist denomination of Christians, who may at any time hereafter become a member of and unite in their religious worship with the said *United Baptist Society,* and give in his or her name to the clerk of the town or parish to which he or she belongs, with a certificate, signed by the minister or clerk of said society, that he or she has actually become a member of, and united in religious worship with, the said society in *Russell,* aforesaid, fourteen days previous to the town or parish meetings therein to be held in the month of March or April annually, shall, from and after giving such certificate, with his or her polls and estates, be considered as a member of said society; *provided, however,* that such person shall first pay his proportion of all money assessed in the town or parish to which he or she belonged previous to that time."

The indictment stated the substance of the *act* above mentioned, and that the society thereby incorporated did congregate, associate, and assemble as a corporation from the passing of the act to the time of finding the indictment, and that the defendant was elder and teacher, and empowered in that capacity to sign certificates as in and by *the same *act* is provided to be signed by the minister of said society; and that the defendant, *under pretext of the act aforesaid,* wickedly and fraudulently intending to evade the provisions and intendment of the same *act,* and to defraud the town of *Montgomery* of the taxes which by law might be or had been legally assessed on the poll and estate of one *J. W.,* towards the support of the public worship therein, did on the —— day of —— falsely, &c., make a certificate directed to the town clerk of *Montgomery, in the words and figures following,* viz. [*Here the certificate was set out, omitting, however, the date and direction to town clerk.*] When in truth and in fact the said *J. W.* did not belong to the said society, nor had he before that time attended with the said society for religious worship, &c.; of which the defendant was well knowing, &c.

The indictment contained thirteen other counts, charging that the defendant had falsely and fraudulently signed certificates in favor of *that* number of persons, and with the like intent; the different counts were nearly or precisely alike; and in all of them the date of the certificate and the direction to the town clerk were omitted.

*Ashmun,* for the defendant, objected to the certificates offered

going in evidence to the jury on account of the variance; insisting that as this indictment is drawn, a strict recital was necessary.

The *Attorney-General* (*Sullivan*) contended that such recital was not necessary, and said that at the time he drew the indictment he had authorities before him upon the subject, and had intentionally omitted the dates and direction.

The Court (*Dana*, C. J., *Strong*, *Sedgwick*, and *Thacher*, justices,) ruled that the objection was fatal, and that such an allegation, viz., " *in the words and figures following*," required a precise recital, the same as if the *tenor* had been alleged.

*The defendant consented to waive all exceptions on [ * **56** ] account of the variance, and by direction of the Court his waiver was reduced to writing, signed by him, and filed in the case.

In this case, after proving that the certificates were made by the defendant, and that the persons certificated were inhabitants of *Montgomery*, it became a question whether it was not incumbent on the defendant to prove that the certificates were true; i. e. that the persons were *Baptists*, and belonged to the society incorporated by the *act* mentioned in the indictment.

For the defendant, it was insisted, that in this, as in all cases, the burden of proof is on the prosecutor; the indictment alleges that the certificates were false; it is the duty of the prosecutor to prove them false; as much so as in a charge of forgery, in which it was never contended that the defendant was bound to prove that the instrument alleged to have been forged was in fact genuine.

For the prosecution, it was said that to require this proof on the part of the government, was in effect requiring proof of a negative, which is contrary to the rules of law, as well as the dictates of common sense; that the *two* facts proved were all that were capable of positive proof; that the legal *presumption* is, that every person belongs to the standing religious order or denomination in the town in which he resides, and is taxable there accordingly; that this presumption may, however, be repelled by contrary evidence, but this is to come from the person claiming the exemption, or, as in the present case, from the person who undertakes to certify it; that the proof now insisted on is, that government shall prove the certificated persons were *not* Baptists, and had *not* joined the society; which is absurd.

The Court seemed to think that they ought to presume the certificates were true, until the government proved them to be false.

**43**

[ * 57 ]     * Evidence was then produced that the certificated persons did not attend the religious meetings of the Baptists; which, as to some of them, was testified by the deacon of the church, who said he had never seen them there, and did not know of their attending those meetings.

Upon which the Court said that in a case of this nature it was impossible for government to produce any thing more than such kind of negative evidence of the fact; which having done, it lay upon the defendant to prove the affirmative, *viz.*, that the certificates were true.

Some of the certificates stated that the person belonged to the society, (of which the defendant was teacher,) and that he did frequently and usually, when able, attend with the society in their meetings for religious worship; others of the certificates mentioned nothing about frequent and usual attendance, but only that he had become a member of the society, or had joined the society.

The *Attorney-General*, in addressing the jury, endeavored to convince them that those of the certificates which contained the clause of frequent and usual attendance in the meetings of the society for religious worship, must have been, within the knowledge of the defendant, false; and, therefore, that as to those, he was guilty of a breach of the act of March 4, 1800, (*stat.* 1799, *c.* 87, § 4,) providing for public worship and other purposes therein mentioned. But he was interrupted by the counsel for the defendant, who insisted that as the indictment charged the fraud to have been committed *under the pretext of the act aforesaid*, and no act being mentioned or referred to in the indictment but the act for incorporating this particular society, he ought not to be permitted to argue as to the operation of any *other act*.

STRONG, J., who charged the jury, said that it was in-
[ * 58 ]  cumbent upon the government to prove, *first*, * that the certificates were false; *secondly*, that the defendant knew them to be so at the time of making them, and, *thirdly*, that they were made with intention to defraud (*a*) ; and he said he was authorized to say that the Court were unanimously of opinion that the jury in their inquiry as to the guilt of the defendant must confine themselves to the intent to defraud under the statute stated in the indictment; and that they would not inquire whether the defendant had been guilty of the breach of any other statute.

The jury acquitted the defendant.

(*a*) Is not the *third* an inference of law from the *two* former?

44

After the verdict was given, the *Chief Justice* observed, and requested that it might be particularly noticed, that the Court had not given any opinion as to the sufficiency of the certificates to exempt the persons therein named from the payment of taxes for the support of religious worship in *Montgomery.*

---

A deed cannot be proved in Court, (for the purpose of registering it,) by the oath of a subscribing witness, unless the grantor has a permanent residence out of the state.

MOTION to prove in Court (for the purpose of registering it) a deed made by *Abnah Sacket* of *Westfield,* by the oath of one of the subscribing witnesses, *Sacket* being out of the commonwealth. But it appearing that the family of the grantor resided in the commonwealth, and that he was absent only for a particular purpose, and had not taken up a permanent residence out of the state, the Court held that this could not be considered as a *removal* within the meaning of the statute, and refused the motion.

See act of March 10, 1784, sect. 4, (*Stat.* 1783, *c.* 37.)

[ * 59 ]